Our next case is ILOR v. GOOGLE Good morning, Mr. Court. This case is neither frivolous nor acceptable. The District Court's finding to that effect is grounded on three fundamental errors. One legal, two factual. The legal error comes from the statement attributed to ILOR that the District Court referred to as the differentiator statement. The legal issue there is whether, at the time that statement was made, ILOR knew or should have known that its patent did not cover Google's product. To resolve that issue, we must focus on the claim language itself, in this case, Claim 26. It's undisputed that at the time that statement was allegedly made, the patent did not issue, Claim 26 did not exist in any form, and the specific claim limitation that eventually the case turned on did not exist either. Mr. Schmidt, even if you persuade us that that was an error, we still have the prosecution history itself to contend with. Wouldn't that, in and of itself, be enough to reflect some subjective bad faith under the circumstances of this case? I believe that the District Court's reliance on the prosecution history is clearly erroneous in this case. It basically comes from the District Court's claim analysis. I think the District Court appears to be saying that just because ILOR was wrong in its claim construction, that raises an inference of bad faith. And we know, Judge Dyke, for example, from your panel decision in Brooks Furniture, that a patentee's ultimately incorrect view of how a court will find does not itself establish bad faith. There has to be more, and in this case, that more is missing. Well, Brooks Furniture says there's got to be objective frivolousness, right? Objective baselessness. Baselessness. In other words, it has to be frivolous. And isn't the first thing you should address whether this claim that was asserted was frivolous or not? Because if it was frivolous, maybe the subjective bad faith can be inferred based on the patentee's knowledge of the situation. The first question is, was the claim frivolous? The claim in this case was not frivolous. Of course, we know there's two criteria. You kind of have to defend whether displayable could be clickable. Aren't those pretty separate concepts? I'm not sure that that's the fundamental question. The fundamental question is, were ILOR's arguments unreasonable from which we could infer bad faith? The district court never said that any of ILOR's arguments were unreasonable. This court, in the prior appeal, in both its opinion and the questions that were addressed to me by you, Judge Lynn, and by others, never indicated that there was anything unusual about the claim construction issue in that case. It proceeded as a garden variety claim construction issue. So there was nothing unreasonable about the arguments that were ever put forth. That anybody said, until ILOR brought, until Google brought its motion for attorney's fees. You have an interesting circumstance here, it seems to me. And that is this, that you had an earlier filed application with some prosecution history that made it quite clear that to distinguish over the prior art, the claims in question did not require an extra click to bring down the menu. And that patent, the patent where the prosecution history rested, that patent was originally brought to Google's attention. Google then wrote back and said, well no, we don't infringe that patent because we require a click to bring down a menu and your claims don't cover that. See the intrinsic record. And then you took steps to rectify that situation, filing a continuation. And here's the interesting fact that I think is relevant to this analysis. And that is that the claim was presented arguably without the language that limited it to an additional click. But yet you never told the examiner you were trying to recapture what had been disavowed in the earlier prosecution. That ultimately, ultimately did you in, in terms of your infringement case because that prosecution history estoppel was ruled to carry over to these claims. Isn't that, aren't those circumstances relevant to the question of whether this was frivolous? They were very relevant. You certainly knew you had to make an argument about the claims covering something that pulled on the menu with a click, not just being in proximity. So you knew you had to make that case. There's no dispute about it. In kind of a strange way, this case where normally frivolousness, you consider both subjective bad faith and objective baselessness because the fact question of infringement is really not in question. It's all about claims and claim construction. A legal question is almost like those two tests merge and become one. But clearly you knew what you had to do to make a case and you set out to do it. And the overtone here, it's not just prosecution history, but it was an attempt to broaden out the claims without telling the examiner what was going on and ultimately failing. But not before the patent office. But not before the patent office. In fact, you have an intervening terminal disclaimer. Tell us the significance of that. The terminal disclaimer is completely irrelevant, as we argued in the original appeal. You might argue that the terminal disclaimer brings in the earlier prosecution history completely unless you have some additional limitations, perhaps, which distinguishes you. Do you have those? They were different limitations. The language was not the claimant. There were additional limitations in there. And your point is very well taken because that was the whole point of filing the continuation application, was to get something different from what we were arguing in the parent case. So your position is you weren't trying to do anything that you didn't have a right to do. You needed to provide some clear coverage to better your coverage from perhaps the earlier patents. And your belief was that that was legitimate. Yes. And rather than showing bad faith, it shows good faith because it shows we were doing what we were entitled to do to get something different from what we argued in the parent case. I think that given the difficulty in claim construction, Your Honors deal with that virtually every day in many, many cases. The rules are complex. The record in this case was at least arguable, I believe. And we made many, many arguments about it, none of which were said to be unreasonable, and all of which correctly stated the law, correctly stated the facts, were logical, were reasoned, all overall. But simply being wrong should not lead to a part of the exemption in the way that we have in this case where we're being charged with paying over half a million dollars in Google's attorney's fees. Was there no determination by the District Court of a rule of evidence violation here either? No. No, there wasn't. Back to the prosecution history, the examiner allowed the claims for many reasons beyond the displaying, the displayable element, didn't he? Yes. And the reasons for allowance, as we indicated in the prior appeal, and our arguments in this appeal, were not all that clear. Simply to say that one claim is similar to another, and the examiner lumped all these reasons together, so it was very difficult to tell why he was really allowing the case. That, too, shows that a reasonable litigant pursuing the type of claim construction that we pursued in this case could have an arguable position that the prior disclaimer did not apply to the claim that we were asserting. And that's the whole issue, really, what it boils down to. You cannot infer bad faith from the record in this case. This case is just like many other patent cases. There are no indications of bad faith. Shifty arguments, discovery, shenanigans. But we're concerned with whether it was furtile or not. Objective baselessness is the first question, and that's what we've got to decide. Yes. But both must be satisfied, even though there may be an overlap between the two, as you indicated. The objective baselessness, although the District Court talked about it, it never really analyzed why this was objectively baseless. All the District Court judge did was to quote from a portion of his claim construction opinion. All that shows is that we were wrong. It doesn't show that we were bringing that in bad faith. Do you want to save some of your rebuttal time, Mr. Schmidt? I shall, thank you. Thank you. Mr. Schirkenbach, we've been busy this week. Good morning. I have a third one, which you were gracious enough to move for me. Thank you for that. Mr. Schirkenbach, objectively baseless? Yes. When you lose it on claim construction? We all know, almost as a central principle of patent law, that claim construction is very difficult, and the rules can vary from time to time, and the application can vary. You could almost call it a close call. It came here on appeal. I'm trying to figure out when you lose on claim construction like that, how it becomes suddenly baseless that you even filed the claim. I think it's fair to say claim construction in the aggregate, if you look at the statistics overall, might be a coin flip, or some people say that it is. Claim construction in any given case is not, and in this case it was not. Let me ask you, following up on Judge Reiter's question, let's put aside the prosecution history. Okay. Suppose there were no prosecution history. All right. Do you agree that this claim would not have been, this suit would not have been objectively baseless? No. No? And I actually dare say I'm not sure that the court would have, at least as I understand its opinion. The plain language of the claim says that the tool enhancement is displayable based on location. It's objectively baseless based on the plain language of the claim? Well, I think this court said that based on language was not ambiguous. We never thought it was ambiguous. I think the way the claim was written on its face, the reasonable reading was this. Objectively baseless, I don't think, let me put it this way. But people acting in good faith can have different views of things, even if in the ultimate conclusion it's determined that it was not ambiguous. That may be the case, but, of course, we're reviewing for clear error the district court's determination. This court might not think that based on language on its face is so clear as to make it no other conclusion. We're also looking at the clear and convincing burden to start with. Well, true enough, but nevertheless, as the court has emphasized in many of its cases dealing with attorney's fees, the question isn't what you would do in the first instance. The question is whether what the district court did is clear error. I think I had a lot of cases with an award of attorney's fees based on the plain language of the claims. That seems to be a pretty extreme position. It's going to sweep in dozens and dozens of cases. There's a lot more than that here, though, Judge Dyck, obviously. I mean, you've got the plain language. Let's talk about the prosecution history. The prosecution history you're relying on is at 1465 in the appendix. Okay. And it's particularly this in contrast sense in the first paragraph. Go ahead. Well, I don't need to have it in front of me. I'm there. Okay. It's this in contrast sense in particular that you're relying on, right? Yes. Okay. But what strikes me in reading this is it says, in contrast, the present invention detects. The word detects is there. The word detects was in the claims that were being considered then, which are now claims 1 and 9. The word detects does not appear in the claim we're dealing with. Right. Well, that seems to me significant in terms of arguing that this prosecution history, this disclaimer, wouldn't necessarily apply to a new claim, which doesn't include a, quote, detect limitation. Yes, Your Honor, but the prosecution history component of the analysis here was never limited to just this statement in isolation. There are actually three pieces to it, okay? So the parent patent, 496, claims 1 and 9, there's no question. Let's just stick with this statement for a moment. Then you can go on and argue whatever you want about other states. But this statement, use the word detects, which was a word that was in those claims that were then before the examiner, but that word is not in the claim we're dealing with now. Right. And I'm answering your question. Yes, and there's no dispute that the words of the claims technically are different. Yes. The Claim 26 is issued, used based on, it did not use detects. But there are two very important intervening events. Number one, the examiner issued a terminal disclaimer of Claims 1 and 9 of the patent in suit based on Claims 1 and 9 of the parent. And those are some of the claims we've talked about here. The applicant acquiesced by filing a terminal disclaimer, number one. But there were other elements involved. There were a good many reasons beyond just the point you're making that that could have occurred. There were other elements, Your Honor, but the Patent Office's rejection was that they're not patently distinct. So whatever other wording or phrasing there was in the Claims 1 and 9 of the patent in suit, the Patent Office said it doesn't matter. They're the same as Claims 1 and 9 of the parent. Then Eilor says, doesn't say anything, just said the issue's a terminal disclaimer. No argument, issue's a terminal disclaimer. And here's where the rubber meets the road. Then we've got Claim 26, which was added as a batch of claims late in the prosecution. And for those batch of claims, Eilor says they're similar to Claim 9, not the same, we agree, similar to Claim 9 and allowable for all the same reasons. Okay. I understand, but how does that come to be frivolous? You have a good argument. In fact, you won on it. But why does that make their assertions frivolous? Because, well, again, because the District Court felt there was never taking everything together, taking the based on language in the claim itself. You may not feel the same way the District Court did about that, but the District Court felt that was reasonably clear. You look at the specification. We haven't talked about that. The specification is all about not requiring an extra click by the user. It's all about hovering and having this thing automatically pop up. There are no other embodiments. Plains day in the specification. Then you go to the prosecution history, and you see that they explicitly linked allowances to Claim 26 to the parent claims, which they agree have this limitation. Putting all those things together, yes, that is a case where it's not a close call. And there's one other thing. And that is that Mr. Mansfield himself, ILOR itself, talked all about in public and anyone who would listen about how their product was different and better than ours, in part because of this automatic menu pop-up feature. But displayable could be clickable, couldn't it? If all it said was displayable and not based on cursor location? Well, but of course. You're clickable because it's based on the location of where you're clicking. I don't see that there's any problem there. I could at least make the argument that it's displayable based on where the position of my cursor in relation to the hyperlink when I click. An argument can be made. They lost on it, but the language does not literally preclude their argument. It requires a good deal of, as you point out, interpretation. We've got to go look at the specification and read some of that into what this language says. We've got to go look at the prosecution history and see if that informs this language. But specifications and prosecution histories are always somewhat ambiguous depending on context. And it's not baseless, is it? That's a pretty strong word. I really don't think you can adopt a rule that says if there's a plausible argument based only on the claim language, where you can bring your claim, you don't have to look at the specification of the prosecution history. That would create all sorts of mischief. Everybody knows in a patent case you've got to look at the intrinsic evidence. Well, but we argued this whole thing. It was a case that came here, and we argued about the specification. We argued about the prosecution history. You won, but it was a full-blown case, not a baseless assertion of nonsense. Well, you say full-blown case. I mean, obviously, the case was disposed of on summary judgment, which is court-affirmed. And I just, if I may, just direct your attention to the… And we wrote an opinion. If it was fair, wouldn't we have wrote an opinion? And the analysis was fairly lengthy and comprehensive and covered a number of things that were the subject of a legitimate debate. Again, reasonable minds can have differing views. That doesn't necessarily mean somebody's acting in bad faith. If reasonable minds could have different views. But let me leave you with this, because I really don't have much more. Number one, the opinion. I'm not going to tell the court why it wrote an opinion in the first case, but obviously, if you look at that opinion, you will see the bulk of it is about the jurisdictional question. There was a big jurisdictional issue, whether they could appeal the summary judgment and the final judgment as opposed to just a preliminary injunction. And that was really what most of the argument was about the last time we were here. So maybe that's why the opinion got written. But the second part, if I may, is this court itself, if you read the opinion, and again, I'm not going to tell the court what they might have been thinking or whatever, but the opinion essentially talks about the based on language and implies strongly that that's clear. And then says, I'm at 1073 in the published opinion, assuming for the sake of argument, however, that the language of the claim is ambiguous as to whether further user action is contemplated, such ambiguity is eliminated when the claim language is viewed in light of the specification and prosecution history. And then the opinion goes on and says, here's why. Here's what the spec says. Here's what the prosecution history says. So we've got a case here where the district court said there was no ambiguity after you look at the intrinsic evidence. This court said there was no ambiguity after you look at the intrinsic evidence. We say that all the time when we do claim construction. There are lots of opinions that say that. Every time we say that at the end of the road there's no ambiguity, then it's frivolous? Is that what you're saying? No, but I don't know. That's not what I'm saying, Your Honor. What I'm saying is if you've said there's no ambiguity, the district court says there's no ambiguity, and taking whatever else into account the district court did, the district court makes a determination that it's an exceptional case. That's reviewed for clear error. So I think the question for this panel is whether can you say it's clear error for a district court to find a case exceptional when everybody agrees, everybody who matters agrees, that there was no ambiguity as to the answer when you look at all the intrinsic evidence. I say that that's got to be an affirmance. That's the bottom line. Can we look at the expert fees for one quick second? Yes, we can. Because I think we've made it clear in our case law that you can't award that under 285 alone. You have to invoke inherent powers, and that you only do when I think the language we've used is when the temple of justice has been defiled. That's even way beyond baselessness here. And let me tell you why that happened in this case. Has the temple of justice been defiled? Not yet. I suppose there's still a chance. No, Your Honor. The attorney's fees piece of it, I actually meant to raise that. They're not awardable under 285. And the facts of this case don't justify awarding them for abuse of judicial process either. We actually made a litigation misconduct argument that the district court never reached. So the only way to affirm the expert fees portion of the award, which is tiny, it's $7,700 or something like that, is on the basis of waiver. And the reason, frankly, I'm a little embarrassed that we didn't actually deal with this head on in the briefs, neither side did, is that it was never an issue below. Ivor never argued below that you can't get expert fees under 285, and so we never really focused on the issue. But quite right, and we're not saying otherwise. Thank you. Any other questions? Thank you, Mr. Schirkenbach, and thanks for double service this month. Mr. Schmidt, you have more than four minutes remaining. Your Honor, as I will adopt in entirety the arguments that you three have made in favor of my case, and unless you have some additional questions of me, I have nothing further to say. We don't make arguments. We just ask questions. Thank you, Mr. Schmidt.